## KLOTZ v. GORDON.

(Supreme Court, Appellate Term.  May 13, 1909.)

1. PRINCIPAL AND AGENT (§ 136*)—LIABILITY OF AGENT TO THIRD PERSONS.

> A person, disclosing another as his principal in the sale of a building and with his principal's consent receiving the price in his own name, is answerable to the buyer for its return, where possession of the building is not delivered.

> [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 476–491; Dec. Dig. § 136.*]

2. SALES (§ 397*)—RECOVERY OF PRICE BY PURCHASER—EVIDENCE.

> In an action charging that defendant falsely claimed to be the owner of a building and induced plaintiff to purchase the same of him, defended on the ground that defendant only acted as broker for plaintiff and did not represent himself to be the owner, evidence *held* not to support a judgment for defendant.

> [Ed. Note.—For other cases, see Sales, Dec. Dig. § 397.*]

> Goff, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Morris Klotz against Samuel Gordon.  Judgment for defendant, and plaintiff appeals.  Reversed, and a new trial ordered.

Argued before GILDERSLEEVE, P. J., and DAYTON and GOFF, JJ.

Herman Gettner, for appellant.
Jacob Gordon, for respondent.

DAYTON, J.  The pleadings are verified.  The complaint alleged that defendant, falsely and fraudulently claiming the ownership of a building, induced plaintiff to pay him therefor $500.  The building was not delivered.  Repayment was demanded, and refused.  The answer admitted the offer of the building for that sum, the receipt of the $500, and alleged that plaintiff engaged him to purchase it from Mr. Kaminsky, the owner thereof, for the sum of $500, which sum in plaintiff's presence was turned over to Kaminsky by defendant for the plaintiff, and that defendant only acted as agent and broker, and did not represent himself to be the owner of the building, and was to receive from plaintiff $50 for services, but no judgment was asked therefor.  Defendant made no claim upon the trial for the $50 for services to plaintiff.  The issues were tried without a jury, and the trial judge held that the defendant did not represent himself to be the owner of the building, but, on the contrary, stated the name of the owner, thus showing that plaintiff was dealing with a known principal, and gave judgment for the defendant with $30 costs.

The documentary evidence consists of three receipts, one dated May 3, 1905, for $50 deposit on account of the building, balance ($450) to be paid before starting of job, which would be ready Friday for work, signed by defendant, and delivered to plaintiff; another, dated May 4, 1905, for $500, "for the old building known as 'No. 110 Mott

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Street,' to be wrecked," signed by defendant, and delivered to plaintiff; and the third, dated May 4, 1905, as follows:

"Received from Samuel Gordon the sum of $500 for the old building known as 'No. 110 Mott Street,' to be wrecked.

"[Signed]  P. M. Kaminsky, per Louis Harris."

Plaintiff testified that he had known defendant for several years; that they went to the building together, and they agreed on $500 as the price, and defendant said, "You buy it from me." Plaintiff was prevented from taking possession of the building by a third party. He at once went to defendant and demanded the return of the $500, whereupon defendant said, "Will you wait for the money, or get it from the Italian man?" to which plaintiff replied, "I want my money," and defendant said, "Do what you want." This was not denied. Plaintiff further testified that he did not then know Kaminsky, did not go to his place of business, that the second payment of $450 was paid to defendant in a saloon of Tomberg, who with the witness Drasner corroborated him on this point, and further said that defendant stated his ownership of the building on that occasion. Drasner, referring to plaintiff's being prevented from getting the building, testified that defendant said:

"I will try by the Italian, and see if I can get the money. If I get it, you will get it."

This is not denied. A motion to dismiss the complaint was properly denied. Defendant was called, and said: That he, prior to May 5, 1905, had had from $8,000 to $10,000 of business transactions with plaintiff and Drasner. That Klotz asked him if he (defendant) could buy that building for him (plaintiff), to which defendant replied, "Yes." That the next day he took plaintiff to Kaminsky, who said:

"I own that building, and if you want to buy it it will cost you $500."

They agreed on the price, and Klotz told him that he was to get $50 as soon as the deal was closed. That the $450 was paid the following night, about 6 o'clock, in Mr. Kaminsky's office, where Drasner was present. He denied that he knew Tomberg, or was ever in his saloon, but stated that the $450 was paid over the desk and turned over to Kaminsky, who saw him (defendant) sign the receipt to plaintiff. That, when plaintiff was interfered with by the "Italian," he (defendant) called Mr. Kaminsky (from 106 Mott street), who said to Klotz and Drasner:

"Go ahead and take that building down. I sold you that building. That is my property."

On his cross-examination he said that he had known Kaminsky since childhood; that he had negotiated with him for this building at $500 prior to his receipt of plaintiff's $50 deposit. Now comes Mr. Kaminsky, who says in narrative form:

"Plaintiff came with Mr. Gordon and another man in my place of business late in the afternoon and bought for $450 the balance of the building I sold to Mr. Gordon. I got altogether $500. I did not see Klotz and Drasner at the building when Mr. Juliano (owner of the fee) refused to let them tear it down. I did not know Klotz. I had no talk with him in my office. Subsequently Klotz said to me: 'Why don't you deliver the building to Mr. Gordon.' And

I said: 'I took Mr. Gordon around to pull those buildings down, and he can if he wants to. I don't know you in the matter at all. If you cannot get the buildings, come down to my lawyer, and I will get an injunction, and I will get the buildings for you.' He said he did not want to have anything to do with the Italians, etc. There was no transaction in my office, when plaintiff and defendant were present and money was paid, or any receipt signed. I did not know Klotz at all. I never delivered the building to plaintiff. I delivered it to Mr. Gordon. I never said I would deliver it to plaintiff. I never had any transaction with plaintiff in which I told him I was the owner and would deliver him the building. I was not present when the receipt for $500, signed by Mr. Harris, was given."

Mr. Harris was sworn, and said he knew Mr. Gordon, but did not know Mr. Klotz. He got the $500 from Mr. Gordon. The body of the receipt for $500 from Klotz (Exhibit 2) and the body of the receipt for $500 from Gordon (Exhibit A) "are in my handwriting," and plaintiff was present. Mr. Kaminsky was not present when they were being written, but was there when the money was paid. There was no conversation between Kaminsky, Gordon, and Klotz. Mr. Gordon did not say: "Mr. Kaminsky is going to deliver this house to you." Louis Gordon, father of defendant, said that plaintiff and Drasner told him they had bought the houses from his son. "I said: 'Why don't you go and lock him up? Either he gives you the buildings, or you lock him up'—and they arrested his son. All I know is that Kaminsky got the money. I said: 'Mr. Kaminsky told you to tear down the buildings. Why don't you?'"

The receipts signed by defendant prima facie show that he represented ownership of the buildings. Why should he so sign and coincidently state that Kaminsky was the owner? If he was acting as plaintiff's agent for a commission, as he swears in his answer, may he consistently on the trial assert that he disclosed Kaminsky as his principal, in an effort to escape liability? The conclusion of the trial judge that defendant was acting for a "known principal" is radically at variance with the defense of defendant's agency for plaintiff. His story that Kaminsky saw him sign the receipt for the $450 is denied by Kaminsky and Harris. His testimony that he would see Kaminsky and endeavor to buy the house is flatly contradicted by his subsequent statement that he had previously negotiated with Kaminsky therefor at $500. His testimony that he took plaintiff to Kaminsky, who said: "I own that building, and, if you want to buy it, it will cost you $500"—is denied by Kaminsky, who says he did not know Klotz in the transaction, but sold the building to defendant; and Harris says that Gordon did not say that Kaminsky would deliver the house to plaintiff. In brief, defendant and Kaminsky have each destroyed the credibility of the other, while flatly contradicting the defendant, and thus the plaintiff's case is practically unchallenged. As the purchaser he was entitled to be put into possession by the seller. The property not being delivered, there was no consideration for the $500 paid therefor.

If defendant did "disclose" Kaminsky as his principal, and with his principal's consent receive the $500 in his own name, he is answerable on the facts to plaintiff for its return. He may not hide himself behind this "principal," who, if sued, would doubtless plead that

he sold the building to this "agent" (vide receipt per Harris), which agent, notwithstanding his (defendant's) receipts showing the contrary, nevertheless insists that he was acting for plaintiff (vide answer and theory of his defense). These battledores Kaminsky and Gordon (friends from boyhood) should not be allowed to continue to play shuttlecock with plaintiff's $500. The interests of justice will be best promoted by ordering a new trial.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J., concurs.

GOFF, J. (dissenting). This case presents but a question of fact, and the facts at issue are, first, whether the defendant, in selling the building to plaintiff, a dealer in second-hand building materials, acted for a disclosed principal; second, whether there was any element of fraud in the sale. After having heard all the testimony, and having observed the demeanor of the witnesses upon the stand, the trial justice delivered the following opinion:

"The gravamen of the charge is that the defendant, by fraud and deceit, represented that he was the owner of the buildings at 110 Mott street, and that the plaintiff, relying upon the representation, believing it, knowing nothing to the contrary, was induced to part with his money by reason of that representation and the agreement that he was purchasing the property (the buildings) for the purpose of wrecking them. He claims he paid $50 first and $450 afterwards. It is quite evident that this money was paid to the defendant. Having seen the witnesses, having observed their manner of testifying, weighing all the probabilities, I find as a matter of fact that there was no such statement made. I do not believe, from the evidence, that the defendant represented that he was the owner of the property. On the contrary, I find that he did state the name of the owner, and thus the plaintiff was dealing with a known principal. I find the plaintiff has failed to prove the misrepresentation on which he seeks to recover, and therefore give judgment for the defendant."

The foregoing opinion of the trial justice has come up with the record. Under these conditions, the only questions which can be raised upon this appeal are whether any errors were committed by the trial justice, and whether the evidence is so overwhelming that it becomes evident that the determination of the trial justice was dictated either by prejudice, passion, or partiality. It is wholly without the power of this court to weigh the preponderance of evidence anew, and the fact that this court might have found differently, had it presided at the trial, will not permit a reversal of the judgment on that ground. The General Term, in the case of Goodman v. Riccadonna, 13 Misc. Rep. 66, 34 N. Y. Supp. 169, held that:

"The determination of a justice of a district court, upon conflicting evidence, is not the subject of review by this court, unless it appears that he was influenced by prejudice, passion, or partiality"—citing Prince v. Feller, 10 Misc. Rep. 422, 31 N. Y. Supp. 139.

See, also, Langbein on Mun. Ct. Practice, p. 488.

No such charge is even suggested against the justice who presided at the trial. The only question which remains, therefore, is whether or not there is any evidence in the case upon which the court below

could reasonably base its judgment. A careful inspection of the record shows abundant evidence, to quote which would unnecessarily burden this opinion.

As no material errors were committed by the trial justice, it follows that the judgment should be affirmed, with costs.